### Wm. A. Demland v. Pioneer Savings and Loan Co.

**1. Parties May Contract with Reference to State Laws.**

Citizens of different states may contract with reference to the laws of either state. Thus, a contract, executed in Ohio, with a Minnesota building and loan company, may be governed, if the parties so elect, by the laws of Minnesota.

**2. Where no Choice is Made—Duty of Court.**

But where the contracting parties, residents of different states, make no choice, in express terms, then it becomes the duty of the court to ascertain from the evidence and circumstances, surrounding the transaction, which code of laws was selected or intended by the parties to govern.

**3. Interest and Premium Allowed—Not Usury.**

Where the Minnesota law permitted the reception of five per cent. interest and five per cent. penalty, the contract, though executed in Ohio, is not usurious.

**4. Changing Form of Certificate does Not Invalidate.**

Where the business, when done, was not unlawful, the mere changing of the form of a certificate, as under the Ohio law requiring a deposit and certificate from foreign companies, does not invalidate the transaction.

**5. Agreement to Mature Stock—Failure Not Fraud.**

Under an agreement to mature stock in a building and loan company in a certain time, where no fraud was practiced by the company, but in so agreeing, the company was simply too hopeful of the future and did not sufficiently consider the chances of financial depression and disaster, and where borrowers knew the circumstances under which the agreement was made, and the resources of the company, a failure does not operate as a fraud up n their rights.

**6. Promise Cannot be Specifically Enforced.**

And such a promise to a member and borrower in a mutual loan and building association cannot be specifically enforced where the failure is not chargeable to the laches of the company, but was due to financial and business depression.

**7. Members Must Share Losses.**

Members of a mutual building and loan association, whether as investors or borrowers, must share *pro rata* the losses of the concern.

Appeal.

Day, J.

The above named and that of Hannah L. Dillinger v. same, numbers 773 and 774 on this docket, are two cases precisely alike except in the names of the plaintiffs. In all other respects the facts are the same, so that the disposition of one disposes of both.

The petitions assert title and possession in plaintiffs of certain real estate described, situate in the city of Findlay, Ohio; that defendant claims some interest in such real estate adverse to the plaintiffs, asking that it be set up, and that it be held void as against plaintiffs, and that title be quieted in them. In obedience to the request that defendant set up its claim of interest in the real estate described in the petitions, the defendant company, in the form of a cross-petition, sets out as facts, constituting a defense and entitling it to affirmation relief: That the defendant is a Minnesota corporation, duly organized as a mutual building and

loan association, first under the name of the National Building, Loan and Protective Union, and subsequently changed to the Pioneer Savings and Loan Company, under which name it has continued and is now known; that on November 1, 1890, plaintiffs became members of this corporation, each taking thirteen shares of its series " C " stock, which stock was subsequently, on about December 1, 1891, with the consent of plaintiffs, changed for seven shares of short time stock of said company, which shares of stock plaintiffs are still the owners and holders of, subject to a pledge thereof to the company, as collateral security for the payment of a loan of money made to them; that on about March, 1891, on application of plaintiffs, said company loaned each of them $800. Each plaintiff executed a promissory note for the amount, payable seventy-three months after date, with interest at five per cent. and premium at five per cent. per annum, payable in monthly installments at the office of the company at Minneapolis, Minnesota; and at the same time, to secure the repayment of said loans, plaintiffs executed mortgages on the real estate described in the respective petitions, which mortgages were duly recorded in Hancock county records of mortgages. There was a condition in each of said mortgages that they were to become void upon the proper payment of said notes according to their terms, otherwise to remain in full force. On March 2, 1891, upon the change for short time stock, $100 was paid on each of said notes and credited thereon. That plaintiffs paid the interest and premiums in said notes stipulated, up to December 1, 1896; since which time none has been paid; nor have the principal sums been paid in full, or to a greater extent than the aggregate amount of payments of dues made on the stock of said plaintiffs, which aggregate payments amounts in each case to $420, and no more. That plaintiffs made default in paying dues, so that said stock has become forfeited to said company under the laws of Minnesota, and plaintiffs' membership has terminated by reason of their default; that after deducting charges, fines, etc., $13.10, the defendant company has applied the sum of all payments on said stock to the payment of said loans; and there still remains due and unpaid thereof the sum of $292.10, in each case, with interest and premium thereon after December 1, 1896; and therefore that the conditions of said mortgages have been broken. That on April 26, 1897, the corporation, under the laws of Minnesota, went into voluntary liquidation and is now winding up its affairs.

The prayer is for an accounting between plaintiffs and defendant; that the certificates of stock held by plaintiffs be cancelled; that plaintiff's equity of redemption be foreclosed, the premises sold and defendant company paid out of the proceeds, the amount found to be due it.

The answers to the cross-petitions do not deny the facts stated, but concede them, and say in avoidance: That the notes and mortgages and the stock, series " C," was made and entered into by plaintiffs and defendant in the city of Findlay, state of Ohio, and is one transaction, and a contract governed by the laws of Ohio; that the agreement to pay five per cent. interest and premium was not fixed by competitive bidding, was an agreement to pay ten per cent. interest per annum and therefore usurious and void. That defendant fraudulently made the contracts, and never at any time intended to comply with the terms of the stock, to mature it in six and one-half years; and fraudulently omitted and failed to mature said stock in said time; and treating the transactions as one,

Demland v. Loan Co.

plaintiffs have paid all the legal interest on said loans together with the principal, and have each overpaid to the extent of $65.27. That defendant has failed and omitted to make the deposit necessary to enable it to do business in Ohio, since May 1, 1891; and therefore has no right to make the contract changing the stock of plaintiffs as averred in the cross petition. Wherefore plaintiffs pray as in their petitions. A reply was filed putting in issue any substantive matter of defense in the answers to the cross-petitions.

It will be seen that the issues presented in each case arise on the cross-petition of defendant, and the answers thereto of the plaintiffs, and are mainly as to the legality and good faith of the transactions. It is conceded that plaintiffs were stockholders and members of the defendant corporation; that they borrowed the money and gave the notes and mortgages as set out in the cross-petition; that payments of dues on stock, and of premium and interest on the notes, were made at the times and in the amounts precisely as set out in the cross-petition. This is perhaps not formally admitted in the pleadings, but it is clearly made to appear by the testimony of plaintiffs and defendant, so it may be said to be conceded; and it may also be said the account of the payments made on account of stock and on the notes attached to the cross-petition is correct and shows all payments made by plaintiffs to the company; except some payments on account of abstracts of title, initiation fee paid the agent, or in preliminary matters, and which did not go to the company and with which the company is not chargeable. The parties do not differ seriously as to the facts, but are in agreement as to the material facts of the transactions, and perhaps the only dispute between the parties is as to the effect of the law when applied to the unquestioned facts.

It is said the contract was an Ohio one for the reason it was made in Ohio, and therefore the agreement to pay ten per cent. per annum was usurious and void. If the premises are right the propriety of the conclusion must be conceded. It is the law of Ohio that not more than eight per cent. can be properly charged for the use of money, and that sum can only properly be exacted upon an agreement in writing. No premium is allowed in Ohio, except to a building and loan association, and at the date of this transaction, December, 1890, that must be fixed by competitive bidding, which was not done in this case; so, if the Ohio statutes obtain and control, it is clear that nearly or quite one-half the payments on the notes as interest and premiums were usurious, and must be applied as payments on account of the principal debt. The suggestion therefore that the contract is an Ohio one is important. It is certain the defendant company is a corporation under the laws of Minnesota. It is also a mutual building and loan company, and by said laws was authorized to do business as such building and loan company. Its location and principal office and officers were in Minnesota. It did business through its agent with plaintiffs at Findlay, Ohio, where both plaintiffs reside; the contract then was between citizens of different states. The parties were at liberty and could with propriety contract with reference to the laws of either state; so that the contract when made, would be governed by the law of the state selected by the contracting parties. If the parties, as in this case, made no choice in express terms, then it becomes the duty of the court in which the contention is, to ascertain from the evidence and circumstances surrounding and attending the transaction, which of the states—which code of laws

—was selected and intended by the parties to cover and govern and determine the rights of the parties to the contract. The evidence bearing on this proposition, in connection with the surrounding circumstances, we think abundantly establishes the contract as a Minnesota one, to be controlled by the laws of that state. The Minnesota law authorizes the reception of interest and premium by such company; the amount of premium is not required to be fixed by competitive bidding, and in that respect there is nothing of usury in the payment of five per cent. interest and five per cent. premium.

This business, the making of the contracts, subscribing for stock, obtaining the loans—the obligations on either side, all except the changing from one series of stock to another kind of stock, was transacted, and completed, before the law of Ohio requiring a deposit and certificate, to entitle a non-domestic corporation to do business in the state, became the law. The business, when done, was not unlawful, and the mere changing of the form of a certificate of stock it is not believed, would have the effect to invalidate any part of the transaction.

Neither do we think that the agreement to mature the stock in six and one-half years, and a failure to do so, was fraudulent or in any way operated as a fraud, on the rights of the plaintiffs. No fraud was practiced by the corporation in any respect. The company in agreeing to mature the stock in a short time, was perhaps too hopeful of the future, and did not sufficiently discount the chances of financial depression and disaster. The plaintiffs believed they understood the plan and purpose of the company, and did understand it, and voluntarily became members of it, and borrowed money of it and gave their notes and mortgages, and an assignment of the stock as collateral to secure the repayment. They expected their payments of dues on stock, with the profits and dividends earned by the business of the company, would mature their stock and make it available for the payment of their loans, in the time stipulated; and it is possible, maybe probable, these expectations would have been realized, had the times continued propitious. While this is true, it is also true that plaintiffs were aware that the only source of revenue possessed by the company, was in the payment of small sums by its members in the way of dues on stock, and profits arising from its business of loaning money to its members; and its ability to mature the stock, as per agreement, in six and one-half years, was based altogether on anticipated earnings and receipts from the sources I have indicated. Presumably plaintiffs were possessed of all this knowledge, and as rational persons they were chargeable with notice, that at that time, depression and disaster might come, and that too, without fault of either plaintiffs or defendant, and render abortive all effort to mature the stock, as per stipulation. The duly authorized agent of prosperity was not then at the helm and in control of the elements, and panic and widespread disaster did come and seriously affected the situation. The stock did not mature or come near maturing in six and one-half years. The coming of the calamity however, was not the fault of the defendant corporation in any sense, and its coming is not to be charged to the defendant company as in any way fraudulent, as between it and the plaintiffs.

The stock transaction, while apparently connected with the loan of $800, and perhaps concurrent as to time, was in fact a separate and distinct transaction. Plaintiffs could not become borrowers until they first became members of the corporation. They were not required to

Demland v. Loan Co.

borrow because they were members and stockholders. They were entitled to a loan, upon becoming members, but were not compelled to apply for and receive a loan. Whether they would become borrowers or not was a subject matter for agreement after the fact of membership. Having made such contract, therefore, the loans must be regarded as distinct transactions, by which plaintiffs became indebted to the company with a right to have the value of the stock pledged as collateral security, applied in payment; and a liability to have judgment go against them for the balance, with interest.

The rate of interest stipulated in the note is five per cent. The premium provided for of five per cent. is not an agreement for interest but was a sum probably agreed to be paid for precedence in getting the loan, and would cease when the loan matured. In this view only five per cent. interest can be allowed after December 1, 1896.

We decline to allow $8.40 liquidation fee and $4.20 as fines, on plaintiffs' stock after December, 1896. The company should have gone into liquidation at that date. The company was in default then, and not the plaintiffs. Plaintiffs should not be fined for the default of the other party, and therefore we disallow the $4.20 charged as fines.

We fined the value of the stock at the date of the maturity of the notes, December 1, 1896, to be $420.00. This is to be credited on the amount of each note at the same date, which is $700; and it leaves the sum of $280.00 due the company, with five per cent. interest from December 1, 1896, till the 1st day of this term, December 12, 1899, from each plaintiff. There may be a finding of the amount due in each case; also a decree of foreclosure, and if amount is not paid by February 1, 1900, a sale is ordered at costs to plaintiffs.

Judgment accordingly.

*Jason Blackford & Byal*, for plaintiffs.

*W. F. Duncan*, for defendant.